```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
ALEXIS RODRIGUEZ,                    : 05 Civ. 7374 (JSR)(JCF)
                                     :
            Plaintiff,               :      REPORT AND
                                     :      RECOMMENDATION
      - against -                    :
                                     :
NEW YORK UNIVERSITY,                 :
                                     :
            Defendant.               :
- - - - - - - - - - - - - - - - - - -:
```
TO THE HONORABLE JED S. RAKOFF, U.S.D.J.:

Alexis Rodriguez brings this action pro se pursuant to 42 U.S.C. § 1981.  Mr. Rodriguez, who is Hispanic, is a graduate student at the Steinhardt School of Education at New York University (hereinafter "NYU" or "the University").  He alleges that NYU discriminated against him on the basis of his race[1] in connection with, among other things, disciplinary proceedings arising from allegations that he harassed another student.  NYU has moved to dismiss the complaint, while Mr. Rodriguez has moved for leave to amend.  For the reasons that follow, I recommend that the plaintiff's § 1981 claims be dismissed, but that he be permitted to amend the complaint to assert claims under Title VI of the Civil Rights Act of 1964 ("Title VI").

Background

Mr. Rodriguez is a master's degree candidate in the Speech and

---

[1] 42 U.S.C. § 1981 prohibits discrimination based on race, ancestry, or ethnic characteristics.  Saint Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987).

1

Interpersonal Communication Program at the Steinhardt School of Education.  (Second Amended Complaint ("Complaint") at 1).[2]  He is Hispanic and is a citizen of the Dominican Republic.  (Memorandum in Response to Defendant's Attorney Reply [sic]("Pl. Memo.") at 2).

    A. <u>Spring 2004</u>

    Mr. Rodriguez alleges that during the Spring 2004 academic term, he took a class called Non-Verbal Communication, for which he was required to complete a group project.  (Complaint, ¶ 2).  He asserts that the classmates he was assigned to work with refused to meet with him, and that as a result, he had to make a presentation by himself, which caused "feelings of inferiority" and adversely affected his educational experience.  (Complaint, ¶ 2).

    Mr. Rodriguez also alleges that in Spring 2004 he took a class called Workplace Learning, in which he was "teased, insulted, mocked, degraded, and ridiculed as a member of [a] particular minority group" by the professor (referred to in the Complaint as "Professor O'Connor") and by other students.  (Complaint, ¶ 3).  According to the plaintiff, Deborah Borisoff, who is identified in the Complaint as the Chairperson of the Department of Culture and Communication at the Steinhardt School of Education, tried to contact him about the problems he was having in the class, but did not mediate between him and his professor.  (Complaint, ¶ 3).

---

    [2] The first page and part of the second page of the Complaint do not contain numbered paragraphs.  Accordingly, they are referred to by page numbers.

B. <u>Fall 2004</u>

In Spring 2003, the Steinhardt School of Education appointed Professor Beth Seplow to serve as Mr. Rodriguez's advisor. (Complaint, ¶ 1). At that time, the plaintiff and Professor Seplow signed a document that the plaintiff deems a "contract." (Complaint, ¶ 1). The plaintiff alleges that during the registration period at the beginning of the Fall 2004 academic term, Professor Seplow behaved in a hostile manner toward him. (Complaint, ¶ 1). When he accused her of racial prejudice, Mr. Rodriguez alleges that Professor Seplow shouted, "I'm no longer going to be your advisor!" and said, "Are you like that in your own race! I don't like you! It's something about you I don't like." (Complaint, ¶ 1). Mr. Rodriguez alleges that her conduct discouraged him from registering for the Fall 2004 academic term, although he notes that he registered on his own through NYU's telephone registration system. (Complaint, ¶ 1).

C. <u>January 2005</u>

According to the plaintiff, the Associate Dean of Student Services and Public Affairs prevented him from registering for the Spring 2005 semester prior to January 18, 2005, which was the first day of classes. (Complaint, ¶ 4). On January 24, 2005, the plaintiff met with Jeanne Bannon, who is the Director of Counseling

and Student Services at the Steinhardt School of Education,[3] and Patricia Carey, who is the Associate Dean for Student Services and Public Affairs. (Complaint, ¶ 4). At this meeting, they discussed allegations of harassment made by a female student against Mr. Rodriguez. (Complaint, ¶ 4). The plaintiff alleges that the administrators had "angry demeanor, defensive voices, and facial expressions . . . of fear." (Complaint, ¶ 6). Ms. Carey informed him that the charges against him were "serious," and Ms. Bannon told him, "These[] women are scared of you. They don't want to be around you." (Complaint, ¶ 7). Mr. Rodriguez alleges that he was not informed of the allegations prior to this meeting and that there was no attempt to mediate the situation. (Complaint, ¶¶ 5, 10). He maintains that the allegations against him were "meritless," and that he merely communicated with the female student in question by e-mail and by telephone in connection with a course project. (Complaint, ¶ 8, 14).

On January 31, 2005, the plaintiff attended a "school trial" held by the Judiciary Panel at the Department of Student Services and Public Affairs. (Complaint, ¶ 9). Mr. Rodriguez alleges that the Chief of the Judiciary Panel "did not want to let [him] finish [his] answers," and that the Panel "tried to coerce [him] and intimidate [him] into silence." (Complaint, ¶ 9). He further

---

[3] The Complaint refers to Ms. Bannon as the Director of the Department of the Associate Dean for Student Services and Public Affairs. (Complaint at 2).

4

contends that NYU failed to follow the procedures set out in the Steinhardt School of Education Guide for Academic Policies and Procedures in connection with these disciplinary proceedings. (Complaint, ¶¶ 5, 9, 10, 11).

The following day, Ms. Carey informed Mr. Rodriguez that, although he would be permitted to complete his degree, he would be "considered persona non grata in all facilities owned or operated by New York University" other than the library and the building in which his advisor's office was located. (Complaint, ¶¶ 1, 16).

D. Procedural Background

The plaintiff filed an initial complaint and a First Amended Complaint in the United States District Court for the Eastern District of New York in May 2005, seeking monetary damages and injunctive relief pursuant to 42 U.S.C. §§ 1981 and 1983. The case was then transferred to this Court in June 2006. The Honorable Michael B. Mukasey, who was then Chief Judge, dismissed the plaintiff's § 1983 claims because NYU is not a state actor, but granted him leave to file an amended complaint limited only to his § 1981 claim. (Order dated Aug. 19, 2005 (the "8/19/05 Order"), attached as Exh. C to Declaration of Stephanie Vullo dated April 6, 2006 ("Vullo Decl.")). Judge Mukasey's order made it clear that because § 1981 requires racially discriminatory intent, the plaintiff should articulate in his amended complaint

> any statements about his race that were made by the Judiciary Panel or any university administrators, . . .

5

      any disparities between the disciplinary sanctions NYU
has imposed on Hispanics as opposed to similarly situated
white students, or any facts that would indicate a
pattern of adverse, discriminatory treatment of Hispanic
students by NYU in disciplinary proceedings like those
involving plaintiff.

(8/19/05 Order at 7).

    The plaintiff filed the Second Amended Complaint, which seeks monetary damages and injunctive relief pursuant to § 1981, on October 18, 2005.[4] Mr. Rodriguez now seeks leave to amend that pleading to add a claim under Title VI of the Civil Rights Act of 1964. The defendant has moved to dismiss the Complaint pursuant to Rules 12(b)(2), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure.

Discussion

    A. <u>Failure to Serve Summons and Complaint</u>

    Rule 4(m) of the Federal Rules of Civil Procedure requires the court to dismiss an action without prejudice if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, unless the plaintiff can show good cause for his failure to do so. The body of the Complaint

---

[4] The Complaint also makes references to the First Amendment and to the Equal Protection and Due Process Clauses of the Fourteenth Amendment. (Complaint, ¶¶ 4, 11, 17). However, it does not state a claim under either the First or Fourteenth Amendments because NYU is not a state actor. <u>See</u> <u>United States v. International Brotherhood of Teamsters</u>, 941 F.2d 1292, 1295 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'").

names four individual defendants, all NYU employees, who do not appear in the caption: Jeanne Bannon; Patricia Carey; Mary Brabeck;[5] and Deborah Borisoff.  These individual defendants allege that they were never served with process, noting that the Office of Legal Counsel accepted personal service only on behalf of NYU, not on behalf of the individual defendants.

Mr. Rodriguez acknowledges that NYU is the only defendant named in the caption of the Second Amended Complaint[6] and does not allege that he attempted to serve the individual defendants. (Memorandum of Law Opposing Defendant's Motion to Dismiss ("Plaintiff Opp.") at 2-3).  Therefore, it is not clear that the plaintiff actually intended to name those four individuals as defendants.  If he did, the Complaint must be dismissed without prejudice as to Ms. Bannon, Ms. Carey, Ms. Brabeck, and Ms. Borisoff, because they were never served with process.

B. Failure to State a Claim

When considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff.

---

[5] The Complaint identifies Ms. Brabeck as the Dean of the Steinhardt School of Education.  (Complaint at 2).

[6] In addition to NYU, the caption of the First Amended Complaint named as defendants the Steinhardt School of Education and the Department of Associate Dean for Student Services and Public Affairs.  These parties were terminated on October 18, 2005, when the plaintiff served his Second Amended Complaint, which did not include them as defendants.

York v. Association of the Bar of the City of New York, 286 F.3d 122, 125 (2d Cir. 2002).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); accord Drake v. Laboratory Corporation of America Holdings, 458 F.3d 48, 66 (2d Cir. 2006).  Pro se complaints are subject to less stringent standards than formal pleadings drafted by lawyers,  Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam), and should be interpreted to raise the strongest arguments that they suggest.  Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

Section 1981 applies to both state actors and private parties, including private universities.  Yusuf v. Vassar College, 35 F.3d 709, 714 (2d Cir. 1994); Babiker v. Ross University School of Medicine, No. 98 Civ. 1429, 2000 WL 666342, at *4 (S.D.N.Y. May 19, 2000).  In order to state a claim under § 1981, the plaintiff must allege: (1) membership in a racial minority; (2) discrimination in connection with one or more of the activities enumerated in the statute; and (3) the defendant's intent to discriminate against him on the basis of race.  See Brown v. City of Oneonta, New York, 221 F.3d 329, 339 (2d Cir. 2000); Babiker, 2000 WL 666342, at *4.  Mr. Rodriguez has alleged that he is Hispanic, and therefore a member of a racial minority.  In order to defeat a motion to dismiss, the

Complaint must further allege that NYU discriminated against the plaintiff on the basis of his race in relation to one of the activities identified in the statute.

The protected activities enumerated in § 1981 include the rights "to make and enforce contracts, to sue, be parties, [and] give evidence."  42 U.S.C. § 1981.  It appears that the plaintiff relies on the existence of a contract between himself and the University in order to meet this requirement.  The phrase "make and enforce contracts," as used in § 1981, encompasses "the making performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  Therefore, the plaintiff may state a § 1981 claim by alleging that the University breached a contract with him, and that the breach was motivated by racial prejudice.

Mr. Rodriguez first alleges that he was "teased, insulted, mocked, degraded, and ridiculed [by Professor O'Connor and by fellow students] as a member of [a] particular minority group" in his Workplace Learning class.[7]  He also alleges that Professor

---

[7] Mr. Rodriguez also refers to an incident in his Non-Verbal Communication class in which students assigned to work with him on a group project refused to do so.  (Complaint, ¶ 2).  Mr. Rodriguez alleges that these other students were "American." (Complaint, ¶ 2).  However, § 1981 does not prohibit discrimination based on national origin. Al-Khazraji, 481 U.S. at 613; Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998).  Furthermore, while Mr. Rodriguez alleges that his isolation from other students caused "feelings of inferiority," he does not allege that the other students' refusal

Borisoff failed to mediate the dispute between himself and Professor O'Connor. (Complaint, ¶ 3). However, under New York law, while a student can sue his school for breach of contract, "the mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted." Gally v. Columbia University, 22 F. Supp. 2d 199, 206-07 (S.D.N.Y. 1998). Breach of contract claims brought by students against universities are "subject to judicial review only to determine whether the defendants abided by their own rules, and whether they have acted in good faith or their action was arbitrary or irrational." Babiker, 2000 WL 666342, at *6 (internal quotation marks and alteration omitted); see also Ward v. New York University, No. 99 Civ. 8733, 2000 WL 1448641, at *3 (S.D.N.Y. Sept. 28, 2000). Mr. Rodriguez does not point to any contractual obligation on the part of the University to prevent students from being "intimidated and discouraged . . . from participating in class discussions." (Complaint, ¶ 3). Nor does he point to any contractual obligation to mediate disputes between students and professors. Accordingly, Mr. Rodriguez's experiences in his Workplace Learning class cannot support his § 1981 claim.

  The Complaint also refers to a "contractual relationship" between the plaintiff and Professor Seplow, his advisor. (Complaint, ¶ 1). The Complaint alleges that during a meeting in

---

to meet with him was motivated by prejudice. (Complaint, ¶ 2).

the fall of 2004, Professor Seplow terminated this contractual relationship, discouraged him from registering for classes, and made racially tainted remarks in the course of a verbal altercation with him.  (Complaint, ¶ 1).  If a contract between the plaintiff and Professor Seplow existed, these remarks would support his allegation that Professor Seplow "acted with [] racial prejudice."  (Complaint, ¶ 1).  However, although the Complaint refers to a document signed by the plaintiff and Professor Seplow, it does not describe the contents of the document or the terms of the alleged contract.  The plaintiff does not allege that the contract included an obligation to assist him with registration.  Nor does the plaintiff allege that Professor Seplow was contractually required to remain his advisor for a definite period of time, or that the relationship was not terminable at will.  Because the plaintiff fails to allege that Professor Seplow breached any specific contractual obligation, her allegedly biased remark cannot support his § 1981 claim.

     Finally, Mr. Rodriguez claims that in handling the sexual harassment complaint against him, the University breached contractual obligations set out in the Steinhardt School of Education Academic Policies and Procedures.  Mr. Rodriguez claims that NYU did not follow its own rules when it failed to give him notice of the charges against him, failed to refer the matter to the Office of Legal Counsel prior to denying the plaintiff his

right to register for classes, and "failed to mediate the matter at the departmental level." (Complaint, ¶¶ 5, 10, 11). Read liberally, the Complaint might allege facts to support a claim that the University breached an implied contract with Mr. Rodriguez in connection with the disciplinary proceedings against him. However, the plaintiff has failed to allege facts to support an inference that the University was motivated by racial prejudice when it allegedly breached any such contract.

"A plaintiff alleging racial . . . discrimination by a university must do more than recite conclusory assertions. In order to survive a motion to dismiss, the plaintiff must specifically allege . . . circumstances giving rise to a plausible inference of racially discriminatory intent." Yusuf, 35 F.3d at 713. "[B]ald assertions and conclusions of law will not suffice." Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996); accord Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002).

Mr. Rodriguez "has offered no reason to suspect that his being found guilty of sexual harassment had anything to do with his race."[8] Yusuf, 35 F.3d at 714. He has not indicated that any of

---

[8] Mr. Rodriguez argues that in its motion to dismiss NYU has "failed to provide evidence . . . that Mr. Rodriguez warrants exclusion from the University Community" and "failed to plead evidence to prove that the disciplinary proceedings against the Plaintiff . . . [were] neither racially conscious nor racially motivated." (Memorandum of Law Opposing Defendant's Motion to Dismiss at 7). However, when making a motion to dismiss a § 1981 claim, the defendant is not required to prove that its actions were justified and did not result from racial prejudice. Instead, the

the professors or administrators involved in the disciplinary proceedings made reference to the fact that he is Hispanic. Nor has he indicated any disparities between the treatment of Hispanics as opposed to similarly situated white students with respect to NYU disciplinary proceedings. The Complaint states that the defendant "alienated and singled out the Plaintiff as Hispanic and limited [his] participation as a member of a particular ethnic/racial group; whereas [his accuser was] treated as a member of a protected Class of people: White American (citizen) Students [sic]." (Complaint, ¶ 4). However, the student who accused him of sexual harassment was not similarly situated to Mr. Rodriguez in the disciplinary proceedings that stemmed from her accusation.[9]

The Complaint thus does not allege facts to support an inference that the University was motivated by racial prejudice in

---

defendant is obligated to show that, taking all the facts alleged in the Complaint to be true, the plaintiff has failed to state a claim upon which relief may be granted.

[9] In an attempt to demonstrate discriminatory intent on the part of the University, the plaintiff alleges that the sanctions imposed upon him state that should he "enter or attempt to enter a facility owned or operated by New York University [other than the library or his advisor's office], NYU Public Safety Officers will be requested to [e]scort you out of the building." (Complaint, ¶ 16). The plaintiff speculates that if he attempts to enter an NYU building in contravention of this provision, a Public Safety Officer would describe him, after seeing him in the building, as "5' 10" Hispanic Medium built, in his 30s." (Complaint, ¶ 16). Even assuming this allegation is true, a Public Safety Officer's description of the plaintiff as Hispanic for the purpose of apprehending him in no way indicates that the University barred him from the building because he is Hispanic.

its treatment of Mr. Rodriguez during the course of the disciplinary proceedings against him.  Accordingly, the § 1981 claims should be dismissed.

    C. Leave to Amend

The plaintiff seeks leave to amend his complaint to add a claim under Title VI.  This provision states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  The Complaint, when read liberally, suggests racially discriminatory conduct on the part of Professor Seplow, Professor O'Connor, and students in the plaintiff's Workplace Learning class, which could conceivably support a claim under Title VI.

Title VI claims cannot be brought against individual defendants, Folkes v. New York College of Osteopathic Medicine of New York Institute of Technology, 214 F. Supp. 2d 273, 292 (E.D.N.Y. 2002), but an educational institution may be liable under Title VI if it is "deliberately indifferent" to racial harassment to such an extent that the indifference can be seen as racially motivated.  Bryant v. Independent School District No. I-38 of Garvin County, 334 F.3d 928, 933-34 (10th Cir. 2003); see also Monteiro v. Tempe Union High School District, 158 F.3d 1022, 1034 (9th Cir. 1998); Deleon v. Putnam Valley Board of Education, No. 03

Civ. 10274, 2006 WL 236744, at *11-13 (S.D.N.Y. Jan. 26, 2006) (student did not make out Title VI claim where she did not allege that school "encouraged, condoned, or even turned a blind eye" to derogatory remarks by peers); Atkins v. Bremerton School District, No. C04-5779, 2005 WL 1356261, at *2-3 (W.D. Wash. June 7, 2005) (failure to discipline teacher for a single offensive remark does not constitute deliberate indifference under Title VI).  In order to state a deliberate indifference claim under Title VI, the plaintiff must allege facts demonstrating that the school "(1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school."  Bryant, 334 F.3d at 934 (internal quotation marks and emphasis omitted); see also Folkes, 214 F. Supp. 2d at 292 (racial harassment must be so severe and pervasive as to alter conditions of education and create abusive educational environment).

Title VI, like § 1981, prohibits only intentional discrimination.  The actions of other students and of the plaintiff's professors will therefore not be imputed to the University.  See Rubio v. Turner Unified School District No. 202, Civ. No. 05-2522, 2006 WL 2801938, at *8 (D. Kan. Sept. 28, 2006); Nelson v. Almont Community Schools, 931 F. Supp. 1345, 1354 (E.D. Mich. 1996) (describing difference between Title VII's "knew or

15

should have known" standard for hostile environment claims and Title VI's intentional discrimination standard). Cf. Gebser v. Lago Vista Independent School District, 524 U.S. 274, 287-88 (1998) (school district cannot be held liable for sexual harassment of student by teacher based on principles of constructive notice or vicarious liability under Title IX, which, like Title VI, attaches conditions to the award of federal funds). Instead, the plaintiff must allege that he gave the University "sufficient knowledge of the harassment that it reasonably could have responded with remedial measures," Folkes, 214 F. Supp. 2d at 292-93, and that the University failed to take such measures.

The plaintiff should be given leave to amend the Complaint to bring a Title VI claim. However, if he chooses to replead, Mr. Rodriguez must ensure that the complaint states facts that satisfy the elements of a Title VI claim, as described above. He should also note that Rule 11 of the Federal Rules of Civil Procedure requires parties to ensure that their claims have a sound basis in law and in fact, and provides for monetary and non-monetary sanctions against parties who file frivolous or unsubstantiated claims.

Conclusion

For the reasons stated above, I recommend that the Complaint be dismissed in its entirety, but that the plaintiff be granted leave to file a Third Amended Complaint to bring a claim under

Title VI of the Civil Rights Act of 1964. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Jed. S. Rakoff, U.S.D.J., Room 1340, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

                        Respectfully submitted,

                        *James C. Francis IV*
                        JAMES C. FRANCIS IV
                        UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
            November 17, 2006

Copies mailed this date:

Alexis Rodriguez
P.O. Box 1116
New York, New York 10150

Ada Meloy, Esq.
Stephanie Vullo, Esq.
Karen N. Sandler, Esq.
70 Washington Square South
Room 1150
New York, New York 10012